1st. In showing a right out of the lessor of the plaintiff.
2d. At the time of the issuing of the plaintiff's grant, the defendant had a right of occupancy, which rendered the plaintiff's grant void, 1801, c. 2, § 5; the grant of the plaintiff was void under the seventh section of that act, which forbids the entering, surveying, or obtaining a grant from North Carolina; and should any such grant be obtained it shall not be received as evidence in any court of justice in this State.
WHITESIDE, e contra. — Any man who had considered law as a science could never entertain a doubt upon the first ground. Buller or Mansfield would have stared a man in the face if he had asserted that the showing a title out of the lessor of the plaintiff would defeat his action, unless it were in cases where the conflicting claims were derived from the same original source, but not in cases where there were different original grants. *Page 244 
In relation to the second objection, it is clear that the 5th section of the Act of 1801, c. 2, did not confer any legal right whatever upon the occupiers of land, it only gave a power of acquiring a right in preference to others by using certain means. The defendant could, after instituting the right, only avail himself of it in a caveat. The third objection taken cannot prevail, for the legislature had no power to pass such a law; they might regulate the actions of her citizens within her territorial jurisdiction, but were incompetent to saying that a grant issued by North Carolina should be invalid, for North Carolina, in her cession to Congress, had expressly reserved the power of perfecting titles. This being a fundamental law, and annexed to our existence as a State, the legislature could not change it. Upon the first point, EMMERSON, J., agreed with Whiteside.
The first question has long since been decided; it was, however, raised since his being on the bench, and he was so unfortunate as to differ from the majority of the Court; he thought that any clear, legal title shown by the defendant to be subsisting out of the lessor of the plaintiff, ought, upon principles of law, to defeat the action.[1]
Upon the second ground, the Court, consisting of EMMRSON and OVERTON, JJ., agreed with Whiteside, that, supposing the legislature had the power to give the preference contemplated by the fifth section, which was much doubted, it was evident that that section did not confer any legal vested right, but only gave a power to acquire a right of preference, which is perfectly inert until exercised.
The Court, as to the third objection taken, were of opinion that the legislature of Tennessee had no right to pass the seventh section of the Act of 1801. As to perfecting titles to lands in this State, it was expressly reserved to North Carolina until she had complied with her engagements, after which the power was to reside in the United States. The very terms on which we held our existence as a State forbid the exercise of the right of eminent domain. By the compact between North Carolina and this State. *Page 245 
in 1804, and the act of Congress in 1806, this State acquired the right to perfect titles to lands, within certain ascertained limits within the State, which includes much the greatest part of it. Until this compromise and assent of the General Government, this State had no right to make a title to an acre of soil in the State.
The patent to the lessor of the plaintiff is valid.
Verdict for the plaintiff.
[1] See 1 Dall. 18; 2 Day, 151, 152; Gould's ed. Esp. N. P. 32.